**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Case No. 05-cv-02465-LTB-MJW

MELISSA DUSENBERRY,

    Plaintiff,

v.

PETER KIEWIT SONS, INC. and
NORTHWEST PARKWAY CONSTRUCTORS,

    Defendants.

_____

**Order**
_____

Defendants Peter Kiewit Sons, Inc. ("Kiewit") and Northwest Parkway Constructors ("NPC") move for summary judgment on claims by plaintiff Melissa Dusenberry ("Dusenberry") for gender discrimination, sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-1 *et seq.* For the reasons discussed below defendants' motion is GRANTED in part, and DENIED, in part.

**I. BACKGROUND**

Dusenberry began working for NPC June 25, 2002 as part of the construction crew on the Northwest Parkway toll project, a joint venture between Kiewit and Washington Group International. Dusenberry's job was to operate a tractor and other vehicles as part of a support crew which processed dirt or fill for the scrapers, run by other employees. During her time at NPC, Dusenberry reported to her foreman, John Norton, who in turn reported to James Dougherty, Norton's immediate supervisor. Dusenberry, just prior to the events relevant to this

case, was romantically involved with Norton. Norton customarily gave Dusenberry rides to work each morning, since Dusenberry could not drive after receiving a DUI conviction in October of 2002.

The immediate events spurring this lawsuit occurred in February of 2003. On February 17, 2003, Dusenberry told Norton she wished to end their romantic relationship. That day, according to Dusenberry, Norton was "angry," "demanding," behaved like "a total complete jerk" towards her and made "rude comments" about her over the radio.  Nevertheless, Dusenberry accepted a ride to work with Norton the next day, and according to Dusenberry, Norton was not "a total jerk to me or anything. It was just a normal day."

The evening of February 18, 2003, Norton tried to telephone Dusenberry, and left several messages on her answering machine. These messages mainly addressed their personal relationship, with Norton variously imploring Dusenberry to resume the relationship, Norton expressing concern about Dusenberry's health, Norton expressing anger towards her, and at one point urging Dusenberry to take time off from work, or even to quit. Norton called Dusenberry a "bitch" and a "cunt" in one message, and also used various other expletives. One of Norton's messages suggested that Dusenberry "take a couple of days off from work" in order to "get some time and find out what your problems are."

The next morning, February 19, 2003, despite his suggestion that Dusenberry take time off, Norton called Dusenberry saying he needed her at work, and he came to her apartment to drive her in, as had been their routine. Dusenberry states that Norton was driving erratically, "like an idiot," so when they stopped to get coffee she refused to get back in the car. She called a co-worker, Elise Weigand, to pick her up, and also called Dougherty to inform him that she and

2

Norton "had gotten into a fight" and she and Weigand would be late to work. Once at work, Norton issued a reprimand to Dusenberry and to Weigand for being late. Dusenberry initially refused to sign the written reprimand, and involved Dougherty in the dispute. After some discussions, Dougherty, Norton, Dusenberry and Weigand agreed that Dusenberry would accept a reprimand for tardiness, and that no reprimand would be issued to Weigand. Dusenberry states that the rest of the day was "uneventful" until the end of the workday, when she and Norton had an argument, and exchanged expletives.

Dusenberry arranged to ride to work the following day, February 20, 2003 with Weigand. According to Dusenberry, Norton told Weigand that Dusenberry did not need to report to work until 7am. Dusenberry did not independently verify this with Norton, explaining that at this point she and Norton were not speaking to each other. When Dusenberry arrived the next morning at about 6:45am, Norton told her she was late, again, and attempted to give her a second reprimand for tardiness. Dusenberry refused to sign the reprimand, contending that she had arrived prior to 7am, the time Norton had designated to Weigand that Dusenberry should arrive. Norton stated that her start time was 6:30am, and that Dusenberry could not work until she signed the reprimand. Dusenberry said she wanted to see one or both of the two NPC project managers, Steve Medina and Roger Ryburn, who were Dougherty's superiors, but they were not available to meet with Dusenberry. Norton involved Dougherty, who insisted that Dusenberry either sign the reprimand or not work; Dusenberry insisted that she was not late and refused to sign the reprimand. Dusenberry then left the job site, and Dougherty fired her that day. On February 21, 2003 Dusenberry met with Kiewit Personnel and Recruiting Manager, and Assistant EEO Manager, Jane Sewall, in Omaha Nebraska, and explained her situation. Sewall conducted an

3

investigation, and concluded that Dusenberry's firing was justified.

Shortly thereafter, Dusenberry filed a complaint with the Colorado Civil Rights Division, alleging sex discrimination and sexual harassment. In September 2003, Scott Kerwin, a friend of Dusenberry's and a Kiewit foreman, contacted Dusenberry to tell her he believed that positions were available at another Kiewit project, Southeast Corridor Constructors ("SECC"). On September 12, 2003, Dusenberry visited the SECC office to meet with Sam Mojabi, the project Superintendent. On her way to Mojabi's office, she ran into Dougherty, and told Dougherty she was there seeking a job. Dusenberry, before meeting with Mojabi, saw Dougherty enter and leave Mohabi's office. While Dusenberry had "high hopes" of getting a job, based on Kerwin's tip, Mohabi did not offer Dusenberry a job that day, or later. Dusenberry filed this complaint December 6, 2005, alleging sex discrimination, retaliation and sexual harassment.

## II.   STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Once a properly supported summary judgment motion is made, the opposing party must provide specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find

by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986). However, I may only consider admissible evidence in a motion for summary judgment. *Gross v. Burggraf Const. Co.,* 53 F.3d 1531, 1541 (10th Cir. 1995). I may not consider evidence that is merely hearsay or general opinions unsupported by fact. *Id.*

### III.   LEGAL FRAMEWORK FOR EMPLOYMENT DISCRIMINATION CLAIMS

Dusenberry's claims are under Title VII, and so follow the burden-shifting framework established in *McDonnell-Douglass Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Equal Employment Opportunity Commission v. Horizon/CMS Healthcare Corporation,* 220 F.3d 1184, 1191 (10th Cir. 2000). The prima facie case for discrimination differs for each of Dusenberry's claims, and I will address each one individually below.

The defendant then bears the burden of producing a "legitimate, non discriminatory reason" for this employment decision. *Butler v. City of Prairie Village, Kansas,* 172 F.3d 736, 747 (10th Cir. 1999). If the defendant is able to articulate a valid reason, the plaintiff must show that the defendant's stated reason "was in fact pretext." *Id.* at 748.

Pretext can be shown by "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non discriminatory reasons." *Morgan v. Hilti*, *Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997). "Mere conjecture that the employer's explanation is pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.* "Even though all

doubts concerning pretext must be resolved in the plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgement." *Id.* at 1324. To demonstrate that the employer's proffered reason is pretext, the plaintiff does not have to prove that the employer acted illegally or in a discriminatory fashion. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995). "[D]iscriminatory animus *may be inferred* from the simple showing of pretext." *Id.* (Emphasis in original.) Accordingly, a plaintiff can defeat a motion for summary judgment solely by establishing a prima facie case and showing pretext. *Id.*

## IV. DISCUSSION

A. <u>Gender Discrimination</u>

Defendants concede for the purpose of this motion that Dusenberry can make out a prima facie case of gender discrimination. The burden then shifts to defendants to offer a legitimate non discriminatory reason for firing Dusenberry. Defendants offer four reasons for firing her: "She was late for work two days in a row, was belligerent with (Dougherty) . . . lied to (Dougherty) about why she was late, and ultimately refused to accept the second written reprimand for tardiness." These are sufficient to meet defendants' burden.

The dispute here therefore reduces to whether there are factual disputes showing that these reasons are pretext for discrimination. Some of defendants' reasons have little evidentiary support. While Dougherty states that he fired Dusenberry because she "lied" and was "belligerent" to him, these rationales appear only in Dougherty's affidavit from 2006, three years after Dusenberry's termination. Dusenberry's employee profile states that Dusenberry was fired because she quit and refused a reprimand, and does not mention lying or belligerence. Dougherty's contemporaneous "written statement of the key events surrounding her termination,"

also makes no reference to lying or belligerence. This absence of any contemporaneous evidence, and Dusenberry's testimony that she was never informed that lying or belligerence was a reason for her dismissal, is sufficient to create a disputed fact as to these reasons for Dusenberry's termination.

Dusenberry argues that the tardiness rationale is false on two distinct bases. First, she contends she was not late February 20. Dusenberry, citing Weigand's deposition testimony, contends that Norton told Weigand that Dusenberry did not have to come in till 7:00am that morning. Norton's contemporaneous notes from this incident are silent on this point, and in his deposition he states he does not recall if he told Weigand that Dusenberry could arrive at 7am. This is sufficient to raise a fact question as to whether Dusenberry was late on February 20.

Defendants respond that the critical inquiry is whether the employer believed in good faith that Dusenberry was late. *See Rivera v. City and County of Denver,* 365 F.3d 912, 925 (10th Cir. 2004). (An "employer's good faith belief 'would not be pretextual even if the belief was later found to be erroneous.'") But this is of little help. The facts, as stated by Dusenberry and Weigand, implicate Norton's good faith in asserting that Dusenberry was late. While defendants argue that it was Dougherty and not Norton who fired Dusenberry, the facts implicate Dougherty's good faith as well. Dougherty was aware there was an ongoing dispute between Dusenberry and Norton. He knew, according to Norton, that they had a relationship. He knew, according to Dusenberry, that she was late February 19th because Dusenberry and Norton had had a fight, and he knew there was a tardiness dispute February 19. Also, Dusenberry told Dougherty that she was not late February 20. Granting every reasonable inference to the plaintiff, I cannot credit Dougherty's good faith belief that Dusenberry was late February 20.

Dusenberry argues also that even if she was late February 20 NPC does not consistently fire employees who are tardy. Dusenberry provides the examples of several male employees who were late more than once, and were not fired. One of the written reprimands given to this employee stated "this is your last warning," but he was in fact given an additional written reprimand for tardiness a month later. This employee was not fired. Defendants respond that Dusenberry was fired for tardiness and for failing to sign a reprimand, and provide an affidavit of Kiewit Denver District Business Manager Mark Campbell stating that NPC has "no record of any employee who refused to accept a reprimand but was allowed to continue working" and that he is "unaware of any employee who refused to accept a reprimand and was allowed to continue working." Campbell states that one other employee, a male employee, also was terminated for refusing to accept a reprimand. This employee's record verifies that he was fired for refusing a reprimand.

While Dusenberry asserts that other employees routinely failed to sign reprimands and were not fired, the only actual evidence she provides is Weigand's deposition testimony that she failed to sign reprimands on at least two occasions and was not fired, and that it was common practice for employees to not sign reprimands if they believed they were unwarranted. Defendants do not dispute Weigand's testimony, but argue that Weigand is a female employee, so her differential treatment is not evidence of gender discrimination. *See Aramburu v. The Boeing Co.,* 112 F.3d 1398, 1404 (10th Cir. 1997).

Defendants argue that this evidence shows at most inconsistent and incoherent personnel policies, but does not meet Dusenberry's burden to show intentional discrimination. Citing *Miller v. Eby Realty Group, LLC,* 396 F.3d 1105, 1111 (10th Cir. 2005), defendants state that "the

factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions – simply disbelieving the employer is insufficient." However, defendants neglect to mention that a plaintiff's prima facie case, coupled with showing that the employer's stated reasons are pretextual, is sufficient to enable a fact-finder to find discrimination. Indeed, the very next sentence of *Miller* states explicitly: "(T)he evidence establishing the prima facie case, along with the reasonable inferences drawn therefrom, coupled with a disbelief of the employer's explanation, can be sufficient to make this finding (of pretext.)" *Id.*

I have already concluded that Dusenberry has rebutted several of defendants' stated reasons for firing her: there is a fact dispute as to whether she was fired for belligerence and lying, and there is a fact dispute as to whether Norton or Dougherty believed in good faith that she was late February 20. The sole explanation which Dusenberry has not refuted is that Dougherty fired her for refusing to sign her reprimand. In general, to defeat summary judgment an employee must show that each of an employer's stated reasons is pre-textual. *Tyler v. RE/MAX Mountain States, Inc.,* 232 F.3d 808, 814 (10th Cir. 2000). However, the Tenth Circuit has identified several circumstances where "something less than total failure of the employer's defense" may defeat summary judgment. *Jaramillo v. Colorado Judicial Dept.,* 427 F.3d 1303, 1310 (10th Cir. 2005). These include, where

> "(1) the reasons are so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid, (2) the pretextual character of one explanation is so 'fishy and suspicious' that a jury could 'find that the employer lacks all credibility', (3) the employer offers a 'plethora of reasons' and the plaintiff raises substantial doubt about a number of them, (4) the plaintiff discredits each of the employer's objective explanations, leaving only subjective explanations

> to justify its decision, or (5) the employer has changed its explanation under
> circumstances that suggest dishonesty or bad faith."
> *Id.*

I find these exceptions applicable here. The reasons defendants offer – the reprimand and the failure to sign the reprimand – are logically intertwined, since there would be no reprimand if she were not late. Much of defendants' explanations are suspicious and lack credibility, such as the absence of any contemporaneous reference to Dusenberry lying and Dougherty's repeated references to a company policy requiring signing reprimands when no such policy is in the record. I conclude that Dusenberry has raised sufficient doubts about defendants' stated reasons for terminating her to enable a reasonable jury to conclude that these reasons are pretext.

B.  <u>Sexual Harassment</u>

Sexual harassment can take the form either of "quid pro quo" sexual harassment or "hostile work environment" sexual harassment. *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir. 1987). Dusenberry's complaint is not specific as to which form of sexual harassment she asserts. Defendants, in their motion for summary judgment, address only hostile work environment. Dusenberry asserts that since defendants did not address quid pro quo harassment, it is not at issue in this motion. Defendants argue that Dusenberry did not raise this claim until her response brief, but nevertheless address it in their reply. I conclude that both forms of harassment are sufficiently briefed, and I address them accordingly.

    1.  Quid Pro Quo Harassment

Sexual harassment is actionable under Title VII when "a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." *Smith v. Cashland, Inc.,* 193 F.3d 1158, 1160 (10th Cir. 1999) (*quoting Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.

Ct. 2257, 2265, 141 L. Ed. 2d 633 (1998)). "The gravamen of a quid pro quo sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal to submit to the conduct." *Hicks,* 833 F.2d at 1414. A claim for sexual harassment can be refuted either with proof that there was no negative employment action, or that the action was made for legitimate reasons and not because of the employee's refusal of sexual relations. *Smith,* 193 F.3d at 1160.

Defendants contend that Dusenberry's termination was unrelated to Dusenberry's ending of her relationship with Norton, because Dougherty and not Norton fired her, and because her termination was independently justified. I find these arguments unpersuasive. As discussed above, Dusenberry has raised sufficient doubt as to whether defendants' stated reasons for firing her were pretext. Also, whether or not Norton had the formal authority to fire Dusenberry, the reprimand, which heavily implicates Norton was deeply enmeshed with Dougherty's decision to fire Dusenberry.

Although the question is a close one, Dusenberry's claim for quid pro quo harassment survives. Dusenberry testified in deposition that she never perceived a threat from Norton to resume their relationship or risk her job. Dusenberry states that while Norton implored her to resume the relationship, he never told her that her job was at risk if she refused. But Weigand testified that Norton told Dusenberry that he would have her fired if she did not resume the relationship. Norton's phone messages to Dusenberry, while at times rambling, emotional and confrontational, do not contain any explicit or implicit threats about her job. Dusenberry alleges that Norton made a veiled threat to her sister that he might fire her, but this is hearsay evidence not subject to any exception, and thus, not valid for the purposes of a motion for summary

11

judgment. But viewing the evidence and all reasonable inferences from it, and given that Norton was deeply enmeshed with Dougherty's decision to fire her, I conclude that Dusenberry's evidence is sufficient to survive summary judgment on her claim for quid pro quo sexual harassment.

    2.    Hostile Work Environment

A hostile work environment claim survives summary judgment when the plaintiff produces sufficient evidence so that "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Penry v. Federal Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir. 1998). The plaintiff must show that the environment was "both objectively and subjectively hostile," but "she need not demonstrate psychological harm . . . nor . . . show that her work suffered as a result of the harassment." *Id.*

Courts look at all of the circumstances in evaluating a harassment claim, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Trujillo v. University of Colorado Health Sciences Ctr.,* 157 F.3d 1211, 1214 (10th Cir. 1998). This must be more than "a few isolated incidents." *Id.* A plaintiff may only rely on "evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment." *Hirase-Doi v. U.S. West Communcations, Inc.,* 61 F.3d 777, 782 (10th Cir. 1995). Sexual harassment need not take the form of "sexual advances or other instances with clearly sexual overtones," *Hicks,* 833 F. 2d at

1415, but evidence of sexual harassment must be "either gender-based or (have) gender-related implications." *Riske v. King Soopers,* 366 F.3d 1085, 1091 (10th Cir. 2004).

Dusenberry's evidence for hostile work environment here spans the short period between February 17, 2003, when she told Norton she wished to end their relationship, and February 20, 2003, when Dusenberry was fired. Dusenberry does not allege any specific actions by Norton or anyone else that constitute harassment before February 17, 2003, and she testified that while Norton made abusive comments about her after February 20, 2003, these alleged comments occurred after she was fired, and she only learned about them later. Accordingly, the evidence at issue here are Norton's phone messages to Dusenberry on the night of February 17, 2003, and his conduct at work February 17, 18, 19 and 20, 2003. This evidence, cumulatively, is not sufficient to establish a hostile work environment.

During the workday February 17, 2003, Dusenberry states that Norton was "angry," "demeaning," and behaved "like a total complete jerk" towards her." The next day, according to Dusenberry, "was just a normal day." That night, Norton left numerous messages for Dusenberry, calling her, among other things, a "bitch" and a "cunt." However, Dusenberry testified that while she considered these comments "inappropriate," she did not consider them "sexually inappropriate." February 19, 2003, the day Norton gave her a reprimand for tardiness, Dusenberry reports as otherwise "uneventful," until the end of the day when Dusenberry and Norton had an argument where they both exchanged expletives. Dusenberry alleges no other abusive conduct or actions by Norton that day. Weigand testified that Norton called her a "bitch" during the argument over the reprimands, and on other unspecified occasions.

On February 20, 2003, the day she was fired, Dusenberry does not report any specific

actions or events that constitute harassment. While Weigand states that Norton referred to her as a "bitch" over the radio, "so the rest of us all heard it," Norton does not know if Dusenberry heard it, and Dusenberry herself does not mention this in her deposition.  (While Dusenberry alleges in an affidavit that Norton also "called me a bitch to my face and on the radio for all to hear," this affidavit is dated after the filing of defendants' motion for summary judgment, and is inconsistent with her deposition, which states only that he was "demanding things"on the radio, that she could not "remember the exact comments that he made on the radio, but they were not nice," and does not mention using the word "bitch."  A post-hoc affidavit that contradicts a witness' prior testimony cannot, under these circumstances, create a fact issue to defeat summary judgment. *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986.))

These statements do not constitute the kind of "severe or pervasive" statements of a "gender-related" nature necessary to create a hostile work environment. While some of Norton's comments, at the workplace and on her answering machine, are clearly gender-based, the record shows only a handful of instances when Norton used gender-based epithets, and all within a time span of only a few days. Dusenberry's other evidence, that Norton was "demanding," "behaved like a jerk" and used various expletives, are not gender-based or gender-related. This does not show a workplace "permeated" with discrimination. The evidence for hostile work environment here is far less than the evidence in *Penry,* where one plaintiff was subjected to "four specific acts of unwanted physical contact," other periodic touching, a comment by the defendant that a female employee allowed a male co-worker "to get in her drawers anytime," and was taken by a defendant to Hooters, ("a restaurant whose marketing theme is based on its well-endowed female waiting staff.") 155 F.3d at 1260.  The other plaintiff was subject to four gender related

comments, and a co-worker said to both plaintiffs that the "roof of a particular mall (was) shaped like a woman's breasts." *Id.* at 1260. The Tenth Circuit concluded that these statements and conduct did not describe a workplace "permeated with discriminatory intimidation," and thus did not constitute a hostile work environment. *Id.* at 1263. The evidence here is far less than that in *Penry*, and accordingly is not sufficient to defeat summary judgment on this claim.

Defendants, relying on *Succar v. Dade County School Bd.,* 229 F.3d 1343, 1345 (11th Cir. 2000) and other cases outside of the Tenth Circuit, argue additionally that Norton's behavior towards Dusenberry could not constitute sexual harassment because it was based on his personal animus towards her as a result of their failed relationship. On summary judgment, evidence of gender-based animus is not rendered irrelevant merely because it occurs in the context of a failed consensual relationship. I reject defendants' fanciful "failed relationship" defense out of hand, but I nevertheless find that Dusenberry has alleged insufficient evidence to show a hostile work environment.

C.  Retaliation

Dusenberry contends that she was subject to retaliation in violation of Title VII when SECC did not hire her because, she alleges, she filed a discrimination claim against Kiewit and NPC. A plaintiff establishes a *prima facie* case for retaliation by establishing three elements: 1) a plaintiff must show she engaged in some activity in opposition to discrimination that is protected under Title VII, 2) that she suffered an adverse job action, and 3) that there is some causal relationship between the protected activity and the adverse job action. *Medina v. Income Support Division, State of New Mexico,* 413 F.3d 1131, 1135-1136 (10th Cir. 2005).

Dusenberry alleges that when she tried to get a job at SECC, Dougherty spoke with the

hiring official, Mojabi, minutes before she did. Mojabi then told her no positions were available and told her to fill out an application and he would call her if he needed her. Dusenberry asserts that the only reasonable inference is that Mojabi had positions available but, after conferring with Dougherty, refused to offer her one.

Defendants contend Dusenberry cannot show that there was an adverse job action or that there was a causal link between the putative action and her protected activity. In order to show an adverse job action, Dusenberry must show there was a particular position for which she was qualified. *See Griffith v. State of Colo., Div. of Youth Services,* 17 F.3d 1323, 1331 (10th Cir. 1994). Defendants provide affidavits from Mojabi, and from Kiewit Business Manager Brian Winchell, stating that there were no positions for which Dusenberry was qualified when she applied in September of 2003. Dusenberry offers only Kerwin's hearsay statement that jobs were available; which is refuted by Kerwin's own affidavit stating that he did not know of any specific jobs that were available. Dusenberry has failed to meet this part of the prima facie case.

Dusenberry's argument also fails because her evidence of causation is purely speculative. Dusenberry has no evidence that Mojabi knew that she had filed an EEOC complaint, and his affidavit states that he did not know. *See Stover v. Martinez,* 382 F.3d 1064, 1072-1073 (10th Cir. 2004) (official's knowledge of plaintiff's protected activity is essential to a prima facie case of retaliation.) Dusenberry did not hear the conversation between Dougherty and Mojabi, and so has no evidence that they spoke about her. Dougherty and Mojabi both assert that they did not discuss Dusenberry.  Dusenberry has failed to make out a prima facie case for retaliation.

It is so Ordered that defendant's motion for summary judgment (Docket #26) is GRANTED in part, and DENIED in part, as follows:

1) Defendants' motion for summary judgment as to Dusenberry's claim for gender discrimination is DENIED;

2) Defendants' motion for summary judgment as to Dusenberry's claim for quid pro quo sexual harassment is DENIED; and

3) Defendants' motion for summary judgment as to Dusenberry's claims for hostile work environment and retaliation are GRANTED.

**DONE and ORDERED,** this ___8th___ day of May, 2007 at Denver, Colorado.

                                                            s/Lewis T. Babcock
                                              United States District Chief Judge